```
IN THE UNITED STATES DISTRICT COURT FOR THE
          EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
v.                              )     No. CR-08-33-FHS
                                )
RANDALL ERWIN,                  )
                                )
          Defendant.            )
```

**OPINION AND ORDER**

Defendant Randall Erwin seeks an award of attorney fees and expenses pursuant to the Hyde Amendment, 18 U.S.C. § 3006A(statutory note), Pub.L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997), claiming the government's prosecution of the underlying criminal charges against him was vexatious, frivolous, and/or in bad faith. On August 12, 2009, the Court held a hearing on Defendant's Motion for Attorney Fees and Expenses (Docket No. 133) and, thereafter, allowed the parties additional time to compile the trial transcript and submit supplemental briefing on their respective positions. Having reviewed the relevant portions of the trial transcript and the parties' arguments with respect to Defendant's request for fees and expenses under the Hyde Amendment, the Court finds that Defendant's Motion for Attorney Fees and Expenses (Docket No. 133) should be denied.

**BACKGROUND**

On May 1, 2008, the Grand Jury returned a seven-count indictment against Defendant, a former state legislator, on charges of conspiracy (Count I), Honest Services Mail Fraud (Counts II-IV),

1

and Money Laundering (Counts V-VII).  Trial on these charges began on October 6, 2008, before the Honorable Ronald White.  Following a five-day trial, Judge White declared a mistrial on all counts as a result of the jury's inability to return unanimous verdicts.  Defendant was represented during the first trial by Mark Green.  On December 19, 2008, current counsel, Clark Brewster, entered an appearance on behalf of Defendant and Mark Green was allowed to withdraw as counsel for Defendant.  On January 16, 2009, this case was transferred to the undersigned.  On April 9, 2009, Brewster sent a letter to government counsel requesting that they dismiss the indictment against Defendant because the Government's case against Defendant rested entirely upon the testimony of Steve Phipps, a confessed liar who, under oath, admitted to committing hundreds of felonies.  The government declined Defendant's request for a dismissal and a second trial commenced on April 20, 2009, and Defendant was acquitted on all charges on April 24, 2009, after the jury deliberated for approximately four hours.[1]  On May 22, 2009, Defendant filed his motion for attorney fees and expenses under the Hyde Amendment.

## DISCUSSION

The Hyde Amendment authorizes courts to award attorney's fees and costs to individuals who have been subjected to vexatious, frivolous, or bad faith prosecution.  The intent of Congress in enacting the Hyde Amendment in 1997 was to "penalize government for prosecutorial abuses and to deter such inappropriate conduct."  United States v. Schneider, 395 F.3d 78, 86 (2nd Cir.), cert.

---

[1] Brewster renewed his request for the Government to dismiss the charges against Defendant during trial when, in his opinion, it became apparent that the Government's prosecution of Defendant was baseless.

<u>denied</u>, 544 U.S. 1062 (2005).  The Defendant has the burden of proof in connection with a Hyde Amendment application, and he must do more than show that he "prevailed at the pre-trial, trial or appellate stages of the prosecution."  <u>United States v. Gilbert</u>, 198 F.3d 1293, 1298 (11th Cir. 1999).  The Defendant must prove by the preponderance of the evidence:

> 1.  that the case was pending on or after November 26, 1997, the date of the enactment of the Hyde Amendment;
>
> 2.  that the case was a criminal case;
>
> 3.  that he was not represented by assigned counsel paid for by the public;
>
> 4.  that he was the prevailing party;
>
> 5.  that the prosecution was vexatious, frivolous, or in bad faith;
>
> 6.  that the attorney's fees were reasonable; and
>
> 7.  that there are no special circumstances that would make such an award unjust.

<u>United States v. Bunn</u>, 215 F.3d 430, 436 (4th Cir. 2000)(citing <u>United States v. Pritt</u>, 77 F.Supp.2d 743, 747 (S.D. Va. 1999)).  As the first four elements above are not in dispute, Defendant's ability to recover attorney's fees and costs centers on the issue of whether the government's prosecution was vexatious, frivolous, or in bad faith.[2]

As the Hyde Amendment does not provide definitions for the words "vexatious, frivolous, or in bad faith," courts have turned

---

[2]  Elements six and seven need not be addressed given the Court's finding that this case was not vexatious, frivolous, or in bad faith.

to the common dictionary definitions of those words:

> [V]exatious means "'without reasonable or probable cause or excuse.'" Gilbert, 198 F.3d at 1298-99 (quoting Black's Law Dictionary 1559 (7th ed. 1999)). A frivolous action is "'groundless . . . with little prospect of success; often brought to embarrass or annoy the defendant.'" Id. (quoting Black's Law Dictionary 668 (6th Ed. 1990)). And, bad faith "'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.'" Id. (quoting Black's Law Dictionary 139 (6th ed. 1990)).

Bunn, 215 F.3d at 436; see also Schneider, 395 F.3d at 86 n. 3. As these definitions suggest, the "vexatious" and "frivolous" components of the Hyde Amendment standard contemplate a prosecution which is groundless and has no reasonable prospect of securing a conviction. Such a finding, however, would run contrary to the Court's denial of Defendant's Rule 29 Motion presented at both the close of the government's case-in-chief and at the end of the presentation of all the evidence. In denying Defendant's Rule 29 Motions, the Court determined that in considering the evidence in the light most favorable to the government, there was substantial evidence, evidence beyond a mere scintilla, from which the jury might reasonably find the Defendant guilty of the crimes charged beyond a reasonable doubt. That the second jury determined the evidence did not support a conviction on any count against Defendant does not negate or nullify the Court's determination.[3] The Court's findings in the context of the Rule 29 Motions that there were "sufficient grounds to present the case to the jury,"

---

[3] As noted above, a mistrial was declared after the jury in the first trial of this matter was unable to reach a unanimous verdict as to any count.

4

United States v. Gugnani, 178 F.Supp.2d 538, 543 (D. Maryland 2002), essentially precludes a finding under the Hyde Amendment that the prosecution of Defendant was "vexatious" or "frivolous." See Pritt, 77 F.Supp.2d at 747 ("[i]f a court denies a defendant's motion for acquittal at trial as to all counts, the prosecution cannot have been frivolous as a matter of law.")(citing United States v. Troisi, 13 F.Supp.2d 595, 597 (N.D.W. Va. 1998).

Even assuming the Court is not precluded from reversing course from its previous findings, the Court has undertaken a thorough and comprehensive review of the transcript of the second trial of this action and concludes the prosecution, while certainly subject to criticism based on prosecutorial judgment, evaluation, and discretion, was neither frivolous nor vexatious. As he did at trial, counsel for Defendant, in his brief, forcefully and adeptly points out the many inconsistencies and contradictions prevalent throughout the government's prosecution. While these arguments and the related evidence in connection with those arguments proved to be extremely successful in countering the government's theory of the case, they do not transform this prosecution into one which can be labeled either frivolous or vexatious. Essentially, Defendant argues the government's entire case was built upon the testimony of its primary witness, Stephen Phipps, a pathological liar, con man, and felon, who was motivated to implicate Defendant, and other high profile public figures, in order to curry favor with the government with respect to his own criminal activity. Defendant's counsel vigorously and skillfully exposed the weaknesses and inconsistencies in the government's case, in particular, its reliance on Mr. Phipps and the validity and soundness of the government's corroborating evidence. While Defendant and counsel are fervent in their belief that the government, by relying on Mr. Phipps's testimony, failed to fulfill its obligation to see justice

5

done in this prosecution, the Court cannot agree with such a conclusion - even while the Court does question the government's evaluation of the soundness of this prosecution.[4]

At the heart of this prosecution is the government's theory that Defendant steered money from the legislature to Mr. Phipps through entities in which Mr. Phipps was associated. It was the government's position that in consideration for his efforts, Defendant received kickbacks through one of Mr. Phipp's entities, Indian Nations Entertainment ("INE"). The evidence, although certainly disputed and subject to varying interpretations, established a plausible case for Defendant's ability to steer or influence the direction of monies from the legislature and his receipt of money (via cash payments and a refusal to be paid by check) from INE, not for services rendered on behalf of INE or a return on investment, but as part of a kickback for his efforts on behalf of Phipps. The crux of the charges against Defendant in this prosecution was outlined in the following excerpt from the Court's instructions:

> Public officials and public employees inherently owe a duty to the public to act in the public's best interest. If, instead, the official acts or makes his decision based on the official's own personal interests - such as accepting a bribe, taking a kickback or receiving

---

[4] If nothing else, the government is consistent in its endorsement of Phipps. The government's belief in the veracity of Phipps as a witness is further evidenced when it moved for a downward departure of the sentencing guidelines based on Phipps's substantial assistance in the government's investigation into public corruption in the State of Oklahoma. Phipps pled guilty to a charge of conspiracy in violation of 18 U.S.C. § 371 in Case No. CR-07-43-RAW and was sentenced by Judge White on May 27, 2009, to a term of imprisonment of twelve months and one day. In connection with Phipps's sentence, Judge White granted the government's motion for downward departure.

6

> personal benefit from an undisclosed conflict or interest
> - the official has defrauded the public of the official's
> honest services even though the public agency involved
> may not suffer any monetary loss on the transaction.

The Court concludes the evidence of payments to Defendant combined with the evidence of his influence, if not outright steering, of funds to Phipps' enterprises is sufficient to present a plausible case of honest services mail fraud and the related charges outlined in the indictment - notwithstanding the fact that the government's primary witness is an admitted liar, con man, and felon.  While those attributes certainly would give a prosecutor reason to pause and question the probability of success at trial, they merely go to the weight and credibility of the government's case.  It is certainly true that prosecutorial judgment and discretion might have been exercised differently in other hands, but that factor alone does not equate with a finding of frivolous or vexatious conduct sufficient to entitle Defendant to fees under the Hyde Amendment.

Finally, the Court concludes no basis exists for a finding of bad faith.  Defendant argues the government exhibited bad faith with respect to its sponsorship of Phipps as a witness, its changing of theories in its closing argument, its attempted bootstrapping of unrelated guilty pleas and convictions of other crimes and people, and its misrepresentation of the evidence regarding money being sent directly to INE.  During his closing argument, counsel for Defendant offered similar arguments concerning the government's prosecution of his client, i.e., that the "government makes it up as they go along," that the government "lacked the fortitude" to objectively assess its case, that "there's not an ounce of honesty in anything that's done with this charge or any of these charges," and that he doesn't know how the

7

government lawyers and agents can "sleep at night" after bringing these charges.  Defendant's argument suggests that the government not only taught Phipps to sing, but to compose.  Given the outcome of this case, these arguments may certainly have been influential with respect to the jury's return of not guilty verdicts approximately four hours after retiring to deliberate.  The Court finds, however, that while these arguments address a prosecution which is riddled with poor judgment and evaluation, they are not linked to conduct on the part of the government which can be classified as "the conscious doing of a wrong because of dishonest purpose or moral obliquity."  <u>Bunn</u>, 215 F.3d at 436; <u>see</u> <u>Gugnani</u>, 178 F.Supp.2d at 545-46 (in denying a claim of bad faith on an allegation of knowingly using false information to obtain an indictment, the court concluded the government did not misguide the grand jury and noted that the defendant had not shown that the government either (1) withheld information from grand jury which would have prevented the return of the indictment or (2) presented false information or returned an indictment containing legal standards that were contrary to established law).[5]

---

[5] Additional comment is warranted as to Defendant's claim that the government "ambushed" the defense by changing theories when it argued in closing argument, allegedly without evidentiary support, that Defendant received kickbacks for having assisted in the amendment of a bill which enlarged the scope of gaming machines permissible in Oklahoma Indian casinos.  While such theory does not mirror the government's primary theory that Defendant assisted in legislation appropriating money which was steered to INE in exchange for kickbacks, it is sufficiently related and supported by a construction of the evidence (Defendant's grand jury testimony, Government's Exhibit No. 16) taken in the light most favorable to the government.  As to the "ambush" aspect of the argument, the Court notes that the Indictment sufficiently notifies Defendant of such a related theory when it charges Defendant and others with "steering the funds and *peddling their influence to benefit said entity or entities*." (Emphasis added).

**CONCLUSION**

Based on the foregoing reasons, the Court finds Defendant has failed to satisfy his burden under the Hyde Amendment. Defendant's Motion for Attorney Fees and Expenses (Docket No. 133) is denied.

It is so ordered this 3rd day of May, 2010.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma